UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Zainab M. Chaaban,                                  Case No.: 19-44577
                                                      Chapter 7
        Debtor.                                  Hon. Mark A. Randon
_____/

Stuart A. Gold,

        Plaintiff,

v.                                                            Adversary Proceeding
                                                            Case No.: 19-04294
Mohammad Chaaban and
Marjorie Chaaban,

        Defendants.
_____/

## OPINION AND ORDER GRANTING THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

**I.     INTRODUCTION**

For more than eight years, Debtor, Zainab Chaaban, owned a home in Detroit, Michigan ("the Abington Property"). In 2017, Debtor sold the Abington Property to her ex-husband for $45,000.00. He paid Debtor $10,000.00 in cash; the $35,000.00 balance was paid in installments to Debtor's father. Less than two years later, Debtor filed bankruptcy.

The Chapter 7 Trustee seeks to recover the $35,000.00 from Debtor's parents as constructively fraudulent transfers. Debtor's parents say they were mere conduits and passed all of the money received from Debtor's ex-husband to Debtor, which she used to

support herself and her daughter. They also contend Debtor was not insolvent at the time of the transfers. The Court heard argument on March 2, 2020.

Because: (1) Debtor did not receive any value in exchange for the transfers; (2) she was insolvent at the time of the transfers; and (3) Debtor's parents were not mere conduits, the Court **GRANTS** the Trustee's motion for summary judgment.

## II.    BACKGROUND

### A.    *Debtor's Purchase of the Abington Property*

Debtor purchased the Abington Property on October 3, 2008, using funds she received from her father.[1] She lived there with her parents until she got married in 2010 and moved out to be with her husband. When they divorced four years later, Debtor returned to the Abington Property with her daughter.

In 2015, Debtor's ex-husband moved into the Abington Property. Although Debtor and her family no longer lived there, Debtor still owned the home. Debtor's ex-husband paid her father $750.00 a month in rent.

---

[1]The purchase price of the Abington Property is unclear. The warranty deed says it was purchased for $20,000.00; Debtor's affidavit says it was purchased for $30,000.00.

### B. *Debtor's Ex-Husband Purchases the Abington Property*

On April 27, 2017, Debtor's ex-husband purchased the Abington Property for $45,000.00 via a quit claim deed from Debtor to her ex-husband and his new wife.[2] The quit claim deed falsely states that the purchase price was $100.00.

According to Debtor, her ex-husband paid her $10,000.00 in cash, but she lost that money at a shopping mall. As a result, the $35,000.00 balance was paid in cash installments to Debtor's father. Debtor's affidavit states, "as my father received the money on my benefit [sic] it was paid to me which I used to support myself and my daughter."

Debtor's father testified at his deposition that he received installment payments from Debtor's ex-husband "every one, two months, three, four months, something he give [sic] me little by little, five thousand, seven thousand, two thousand. Something like that. I don't even remember the amounts. I don't remember the dates, so anything that has to do when, [sic] I don't remember." Debtor's father also states in his affidavit that "I merely acted as a conduit to insure that my daughter received the funds. [A]ll sums for the sale of the home on Abington were paid to the debtor through me as a conduit. I did not

---

[2]Debtor's Statement of Financial Affairs for Individuals Filing for Bankruptcy indicates Debtor sold the Abington Property for $50,000.00.

-3-

retain any of the proceeds from the sale of the Abington home. [O]nce I received the payments I gave them to my daughter for her support and the support of her daughter.[3]

However, Debtor's father testified during his sworn deposition that as he received the $35,000.00 in cash, he took some of the money home, where his wife used it to support the Debtor, he deposited some of the money in his bank account, and he kept some of the money in his pocket to pay Debtor "as we go [sic] along." He testified that all of the money has been spent.

### C. *Debtor's Bankruptcy Filing and Proofs of Claims*

Debtor filed Chapter 7 bankruptcy on March 27, 2019. Five claims were filed totaling $57,114.12. Although Debtor did not object to the claims, Debtor's parents dispute their validity. They argue that before Debtor got married, she had excellent credit and almost no debt; during their marriage, Debtor's ex-husband stole her identity and illegally obtained credit cards and lines of credit in her name.[4]

The Trustee presented an affidavit from Patrick Coscette, Vice President of Bankruptcy at Calvery Portfolio Services, LLC, regarding claims 2 and 3 that were filed in Debtor's bankruptcy. The affidavit indicates "Cavalry's records do not reflect any

---

[3]Debtor's bank account statements show six deposits were made into her account after the sale of the Abington Property, totaling only $820.00. The source of those deposits is unknown.

[4]Debtor's ex-husband is believed to be in either Germany or India with their daughter. The Wayne County Circuit Court issued a warrant for his arrest under the Uniform Child-Custody Jurisdiction and Enforcement Act.

-4-

19-04294-mar    Doc 49    Filed 03/10/20    Entered 03/11/20 09:16:26    Page 4 of 12

dispute by Zainab Chaaban or any other party as to her liability or the amounts owed on accounts xxxx3713 and xxxx6555."[5] These claims have been reduced to judgment, against Debtor only, in the amounts of $32,551.68 and $6,225.91, respectively.

## III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment must be granted "if the movant shows that there are no genuine issues as to any material fact in dispute and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga County Dep't of Children Services*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The Court must draw all reasonable inferences in favor of the party opposing the motion. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011). However, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to

---

[5]Debtor presented a letter she purportedly wrote to Citi Vice President G. Stevens regarding the account ending in 3713, indicating it is a fraudulent account. The letter is dated March 10, 2015, but there is no indication that the letter was mailed, let alone received.

-5-

particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). A mere scintilla of evidence is insufficient; there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

## IV. ANALYSIS

### A. *The Trustee may Avoid the Transfers*

Under 11 U.S.C. § 544(b), "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law[.]"[6] According to the Trustee, the transfers totaling $35,000.00 are fraudulent under Michigan's Uniform Voidable Transactions Act ("MUVTA").[7] *See* MICH. COMP. LAWS § 566.35(1):

> A transfer made . . . by a debtor is voidable as to a creditor . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer[.]

*See also* MICH. COMP. LAWS § 566.34(1)(b):

> a transfer made . . . by a debtor is voidable as to a creditor . . . if the debtor made the transfer . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor . . . [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

---

[6]Debtor's parents do not dispute that the transfers were made within six years of the petition date. *See* MICH. COMP. LAWS §§566.39 and 600.5813.

[7]Because the Court finds the transfers can be avoided under MICH. COMP. LAWS §§566.34(1)(b) and 566.35(1), it need not address the Trustee's arguments that they can also be avoided under MICH. COMP. LAWS §§566.34(1)(a) and 566.35(2).

-6-

As an initial matter, the fact that Debtor's ex-husband paid the $35,000.00 directly to Debtor's father–as opposed to Debtor giving the money to her father–still qualifies as a "transfer" under Michigan law. *See* MICH. COMP. LAWS § 566.31(q) (defining "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset").

### 1. Reasonably Equivalent Value

Both MICH. COMP. LAWS §§566.35(1) and 566.34(1)(b) require Debtor to have received a reasonably equivalent value in exchange for the transfers. A two-step analysis is used to determine a reasonably equivalent value. First, a court should determine whether the debtor received *any* value in exchange for the transfers. *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 F. App'x 337, 341 (6th Cir. 2006). Next, a court should determine if the value received was reasonably equivalent. *Id.* (Citation omitted).

> The MUVTA provides guidance on what constitutes "value":
>
> [v]alue is given for a transfer . . . if, in exchange for the transfer . . ., property is transferred or an antecedent debt is secured or satisfied. Value *does not include an unperformed promise* made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

MICH. COMP. LAWS § 566.33(1). (Emphasis added). In exchange for the installment payments to her father, Debtor received only the unperformed promise of future support payments. Because this is not considered "value" under Michigan law, the Court need not address the second step in the analysis.

### 2. Insolvency

Michigan's insolvency statute provides that "[a] debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent." MICH. COMP. LAWS § 566.32(2).[8] Debtor's parents have the burden of proving "the nonexistence of insolvency is more probable than its existence." *Id.* Debtor's parents argue that Debtor was not paying the debts in her name as they became due because it was a dispute over whether her ex-husband incurred the debts. They assert that the presumption of insolvency does not arise when there is a bona fide dispute.

While there may have been a bona fide dispute over *some* of the debts, Debtor has not disputed the two default judgments against her in the total amount of $38,777.59. The default judgments establish that, at minimum, Debtor was not paying those two debts as they became due–nor could she: Debtor's Three-Year State Tax Return Comparison from 2018 indicates Debtor did not have any income in 2016 or 2017; her gross income in 2018 was $8,738.00.

Because Debtor did not receive any value in exchange for the transfers, and Debtor's parents have not rebutted the presumption that Debtor was insolvent at the time

---

[8]Michigan law also provides that "[a] debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets." MICH. COMP. LAWS § 566.32(1). The Trustee does not argue insolvency under this subsection.

-8-

of the transfers, the Trustee may avoid the transfers under MICH. COMP. LAWS §§566.35(1) and 566.34(1)(b).

### B. The Trustee may Recover the Transfers

The Court must next determine whether the avoided transfers under 11 U.S.C. § 544(b) can be recovered for the benefit of Debtor's bankruptcy estate under 11 U.S.C. § 550(a)(1), which provides that "to the extent that a transfer is avoided under section 544 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from[] the initial transferee of such transfer[.]"

"[A]voidance and recovery are distinct concepts and processes." *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003). Section 544 allows the Trustee to avoid certain types of fraudulent transfers while section 550 empowers the Trustee to recover the property transferred. *Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528, 531 (6th Cir. 2003).

Debtor's parents rely on *Luria v. ADP, Inc. (In re Taylor, Bean & Whitaker Mortg. Corp.)*, 593 B.R. 862 (Bankr. M.D. Fla. 2018), in support of their argument that they do not qualify as "initial transferees" under the recovery statute because they were "mere conduits." The Eleventh Circuit created the "mere conduit" exception to initial transferee liability "to protect those who simply and innocently facilitate the transfer, but do not actually end up with the transferred property." *In re Taylor, Bean & Whitaker Mortg.*

-9-

19-04294-mar    Doc 49    Filed 03/10/20    Entered 03/11/20 09:16:26    Page 9 of 12

*Corp.*, 593 B.R. at 864-65. But, the Eleventh Circuit has only invoked the exception to protect: (1) a financial institution handling and making payments from deposit accounts; (2) the IRS handling tax payments and refunds; and (3) an insurance broker handling payments earmarked for insurance premiums. "In each case, the initial transferee was found to be a mere conduit because it had no legal control over the money transferred but instead had simply passed it on. In addition, the conduit was also found to be innocently unaware of the potentially fraudulent nature of the transfers." *Id.* at 865.[9]

The Sixth Circuit has also weighed in on the issue of what constitutes an initial transferee. "An initial transferee must have 'dominion' over the funds to be an 'initial transferee' under the statute." *In re Hurtado*, 342 F.3d at 533. The Court found defendant was an initial transferee because "she could have invested the funds in 'lottery tickets or uranium stocks.'" The fact that defendant did not choose to use the funds to her own benefit did not undercut the fact that she had that ability. *Id.* at 535 (citation omitted). "The dominion and control test is concerned only with rights, not conduct." *Ogier v. Braswell (In re Clark)*, 435 B.R. 753, 758 (Bankr. N.D. Ga. 2009).

The Eleventh Circuit found thee three entities were "mere conduits" because they did not have any legal right to the money they received. Instead, the money simply "passed through" them to get to the person or corporation legally entitled to the funds.

---

[9] Debtor's father testified at his deposition that he knew Debtor was being sued for unpaid credit card debt.

Here, Debtor's father admitted at his deposition that he and his wife had complete control over the funds: he put some of the money in his bank account, his wife used some of the money, and he pocketed some of the money. Because Debtor's parents had the *right* to use the money as they saw fit, they qualify as initial transferees under the recovery statute.

The Court acknowledges that Debtor's father presented an affidavit, which states he passed the money directly to Debtor and did not keep any funds. But the Court declines to consider this affidavit. "Under the sham affidavit doctrine, after a motion for summary judgment has been made, a party may not file an affidavit that contradicts his earlier sworn testimony." *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016). Because the affidavit directly contradicts his prior sworn deposition testimony–and Debtor's father has not provided a persuasive justification for the contradiction–the Court finds it is an impermissible attempt to create a sham fact issue. *Id.* Moreover, assuming Debtor's parents could prove that the money went from their hands directly to Debtor, this *conduct* does not change the fact that they had control over the funds.

In addition, this was not the first time Debtor's father received money from her ex-husband for the Abington Property. Even though Debtor owned the property, Debtor's father received monthly rent payments from Debtor's ex-husband. It is unknown what Debtor's father did with the rent money. Debtor's father also negotiated the sale of the Abington Property such that Debtor could avoid payment of transfer taxes–the quit claim deed indicated the purchase price was $100.00 instead of $45,000.00.

-11-

19-04294-mar    Doc 49    Filed 03/10/20    Entered 03/11/20 09:16:26    Page 11 of 12

## V. CONCLUSION

Because: (1) Debtor did not receive any value in exchange for the transfers; (2) she was insolvent at the time of the transfers; and (3) Debtor's parents were not mere conduits, the Trustee's motion for summary judgment is **GRANTED**. Judgment will enter against Debtor's parents, jointly and severely, in the amount of $35,000.00, plus post-judgment interest.

**IT IS ORDERED**.

**Signed on March 10, 2020**

/s/ Mark A. Randon
**Mark A. Randon**
**United States Bankruptcy Judge**